**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

MICHAEL LEWIS,                    :
                                  :
         Plaintiff,               :
v.                                :          Case No. 1:11-CV-0180 (WLS)
                                  :
GEORGIA DEPARTMENT OF PUBLIC      :
SAFETY,                           :
                                  :
         Defendant.               :
                                  :
_____    :

**ORDER**

Presently pending before the Court is Defendant Georgia Department of Public Safety's Motion for Summary Judgment (Doc. 26). For the following reasons, Defendant Georgia Department of Public Safety's Motion for Summary Judgment (Doc. 26) is **GRANTED**.

I.    **PROCEDURAL HISTORY**

Plaintiff Michael Lewis filed a Complaint in the above-captioned matter on December 21, 2011. (Docs. 1, 2.)[1] Plaintiff's Complaint alleges that the Georgia Department of Public Safety ("DPS") wrongfully terminated him on the basis of race in violation of Title VII of the Civil Rights Act of 1964, as amended at 42 U.S.C. § 2000e, *et seq.*, and violated his due process when it denied him legal counsel at the hearing regarding his proposed dismissal. (*Id.*) Plaintiff filed a Charge of Discrimination with

---

[1] It appears that Plaintiff filed portions of his Complaint as part of his Motion to Proceed *In Forma Pauperis*. (*See* Docs. 1, 2.)

the Equal Employment Opportunity Commission ("EEOC"), and received his Right to Sue letter on September 27, 2011. (Doc. 1-1.)

On June 7, 2013, Defendant moved for summary judgment as to Plaintiff's Complaint. (Doc. 26.) According to Defendant, Plaintiff's race discrimination claim fails because he cannot identify a similarly situated comparator, and even if he could meet the *prima facie* case for discrimination, Plaintiff's claim still fails because he cannot overcome Defendant's legitimate, nondiscriminatory reason for his termination—that he failed "to uphold two basic tenets of every law enforcement officer's oath; truthfulness and respect for the Fourth Amendment." (Doc. 26-2 at 17-20.) Defendant also argues that Plaintiff's due process claim under 42 U.S.C. § 1983 is barred by Eleventh Amendment immunity and because DPS is not a "person" as that term is defined by § 1983.

On June 13, 2013, in accordance with the Court's procedures governing notice to *pro se* plaintiffs, the Court issued an order directing Plaintiff to file a response in opposition to Defendant's motion. (Doc. 29.) Plaintiff was noticed that he would be required to respond in opposition to Defendant's motion "with affirmative affidavits, depositions, documents[, and] rely with specificity upon evidence that is part of the record." (*Id.* at 1-2.) Plaintiff was further noticed that "[i]f a party fails or refuses to file any materials in opposition to a motion for summary judgment, a **FINAL** judgment may be rendered against that party if otherwise appropriate under the law. In that event, *there would be no trial or any further proceedings.*" (*Id.* at 2.)

On January 24, 2013, Plaintiff filed a number of documents in response to Defendant's Motion for Summary Judgment. Plaintiff filed a Response in Opposition to Defendant's Summary Judgment. (Doc. 31.) Plaintiff filed a Statement of Material Facts to which he contends there is a genuine dispute, but did not file a Responsive Statement of Facts to specifically controvert each of Defendant's numbered facts in its Statement of Undisputed Facts. (Doc. 33.) Plaintiff also filed an Objection to Entry of Defendant's Summary Judgment wherein he objects to Defendant's filing of his deposition transcript without notifying him that the deposition was complete or allowing him to review and sign the transcript. (Doc. 32.) Finally, Plaintiff also re-filed an objection to Defendant's Motion for Leave to File Excess Pages for its brief in support of Motion for Summary Judgment. (Doc. 30.) The Court, however, already addressed, and overruled, Plaintiff's objection in its Order directing Plaintiff to respond to Defendant's Motion for Summary Judgment. (Doc. 29.)

On July 8, 2013, Defendant submitted its Reply in Support of its Motion for Summary Judgment. (Doc. 35.) Therein, Defendant stated that Plaintiff was notified by the court reporter on December 20, 2012, that his deposition transcript was complete and that he needed to make an appointment to read and sign his deposition. (*Id.* at 2.) Defendant also states that Plaintiff failed to include any facts in his opposition brief showing that his dismissal was based upon race in violation of Title VII.

The briefing for Defendant's Motion for Summary Judgment has now concluded, and the Court finds that Defendant's Motion for Summary Judgment is ripe for review.

## II.     Summary Judgment Standard

### A.     Federal Rule of Civil Procedure 56

Pursuant to Fed. R. Civ. P. 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if the quantum and quality of proof necessary to support liability under the claim is raised. *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997). A fact is "material" if it hinges on the substantive law at issue and it might affect the outcome of the nonmoving party's claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *see also Allen*, 121 F.3d at 646. A judgment is appropriate "as a matter of law" when the nonmoving party has failed to meet its burden of persuading the Court on an essential element of the claim. *See Cleveland v. Policy Management Sys. Corp.*, 526 U.S. 795, 804 (1999); *Celotex*, 477 U.S. at 323.

The movant bears the initial burden of showing that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing or pointing out to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See id.* at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party

must do more than summarily deny the allegations or 'show that there is some metaphysical doubt as to the material facts." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. The Court must, however, grant summary judgment if there is no genuine issue of material fact and the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(c).

**B.     Local Rule 56**

Local Rule 56 requires the following from a respondent to a motion for summary judgment:

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried. Response shall be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement which are not specifically controverted by the respondent in respondent's statement shall be deemed to have been admitted, unless otherwise inappropriate.

M.D. Ga. L.R. 56. Here, Defendant properly filed a summary judgment motion along with a statement of undisputed facts, as is required by the Federal Rules of Civil Procedure and the Local Rules of this Court. (Doc. 26-1.) Plaintiff filed his own Statement of Material Facts to which he believes there is a genuine issue of disputed fact but not a responsive statement of facts, as required. (*See* Doc. 33.) Thus, in accordance

with L.R. 56, where not controverted, the facts set forth in Defendant's Statement of Material Facts are deemed admitted.

Additionally, while Plaintiff filed some exhibits in conjunction with his response brief, Plaintiff's Statement of Material Facts did not include any specific citations to record evidence. (*See generally id.*) As mentioned previously, Rule 56 requires that "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). Stated in other words, "conclusory assertions contrary [to the movant's assertions], in the absence of supporting evidence, are insufficient to withstand summary judgment." *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (citations omitted). Thus, by not properly citing to record evidence, the facts that Plaintiff proffers in opposition to Defendant's Motion "lack evidentiary value for the purpose of summary judgment." *Wells v. XPEDX*, No. 8:05-cv-2193, 2007 WL 2696566, at *11 (M.D. Fla. Sept. 11, 2007) (citing *Arvigan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991)).

Nevertheless, despite the fact that Defendant's facts are deemed admitted by operation of the local rules and that Plaintiff's "facts" lack the requisite evidentiary support, this does not mean that Defendant will be excused from "the initial burden of production in demonstrating the absence of any genuine issue of material fact," or that the Court is relieved of its duty to "satisfy itself that the burden has been satisfactorily discharged." *Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008). The Court is still required to make an independent review of the record before deciding Defendant's Motion for Summary Judgment. *See United States v. Delbridge*, No. 1:06-cv-110, 2008 WL

1869867, at *3 (M.D. Ga. Feb. 22, 2008) (WLS) (concluding that Eleventh Circuit precedent does not allow a district court to grant a summary judgment based on default). Plaintiff's insufficient submissions have, however, created an uphill battle in his quest to prevail as "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995); *Henry v. City of Tallahassee*, 216 F. Supp. 2d 1299, 1310 (N.D. Fla. 2002) ("[W]hen a party fails to file a proper Rule 56.1(A) statement, district courts are not obligated to search for a fact question by sifting through the record.")

Having established the applicable summary judgment standards, the Court will proceed to the facts.

## III.   RELEVANT FACTUAL BACKGROUND

The following facts are derived from the Complaint (Doc. 1); Defendant's Answer (Doc. 9); Defendant's Statement of Undisputed Facts (Doc. 26-1); and where appropriate and compliant with the applicable rules, Plaintiff's Statement of Disputed Material Facts (Doc. 33), all of which were submitted pursuant to Local Rule 56; and the record in this case. Where relevant, the factual summary also contains undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits, all of which are construed in a light most favorable to Plaintiff as the nonmoving party. *See Celotex Corp.*, 477 U.S. at 322-23; Fed. R. Civ. P. 56.

On June 15, 2009, Ms. Randae Lowe filed a complaint alleging that Plaintiff, a Trooper First Class II ("TFCII") with the Georgia Department of Public Safety ("DPS"),

and two Americus police officers, James Walters and Jason Lovette, entered her home unlawfully on March 9, 2009. (Doc. 26-1 ¶¶ 1, 10.) On or about June 22, 2009, the Commanding Officer of Field Operations for DPS, Major Mark McDonough, assigned the case to Captain Pat Duff, the Troop Commander, and Plaintiff's fifth-level superior, who in turn assigned the case to his immediate subordinate, Lieutenant Dennis Dixon, for investigation. (*Id.* ¶¶ 4, 11.) Upon review of the complaint, Dixon determined that there was a possible Fourth Amendment Issue. (*Id.* ¶ 12.) During the investigation, Plaintiff was asked to submit a written statement. (*Id.*) In his first statement, Plaintiff stated that he received a phone call from Walters who stated that he saw Nardara Dodson, who was wanted on an obstruction warrant, on the front porch of Lowe's house. (*Id.* ¶ 13.) Plaintiff further wrote that he made contact with Walters in the Elk's Club parking lot, and that upon leaving the parking lot, he (Plaintiff) observed Dodson wearing a white shirt and entering the residence of Lowe. (*Id.*) As discussed in more detail below, for his part, Plaintiff alleges that the account of him making visual contact with Dodson was the result of him (Plaintiff) making a transcript error in his report. (Doc. 33 ¶ 5.) Plaintiff states that he was not aware of the issues concerning his statement. (*Id.* ¶ 6.)

After receiving contradicting reports about the incident from Walters and Lovette, and after his own site visit concluded that a positive identification could not be made from the Elk's Club parking lot because of the distance between the lot and the Lowe residence, Dixon requested that Plaintiff submit another written statement. (Doc. 26-1 ¶¶ 16-19.) In the second statement, Plaintiff repeated his prior statement about

making contact with Walters in the Elk's Club parking lot and observing a black male identified as Dodson entering the Lowe residence. (*Id.* ¶ 20.) During an interview with Lowe on July 7, 2009, Lowe informed Dixon that Dodson was not at her home at the time the officers entered it. (*Id.* ¶ 21.)

Due to the conflicting accounts and the fact that Plaintiff had been given an opportunity to revise his statement but did not, McDonough ordered a polygraph. (*Id.* ¶ 23.) On July 17, 2009, Plaintiff consented to and was administered a polygraph examination. (*Id.* ¶ 24.) It was determined that Plaintiff's polygraph results were indicative of deception. (*Id.* ¶ 25.) When asked if he saw Dodson entering the Lowe residence, Plaintiff answered "yes." (*Id.*) After the polygraph, Plaintiff confessed to Dixon that he did not see Mr. Lowe enter the residence as he previously stated. (*Id.* ¶ 26; *see also* Doc. 26-4 at 36-38 ("I didn't necessarily, ah, see him go into the home;" "I didn't see him on the porch at that time, no;" and "I didn't see him.")  Per Plaintiff, he stated "yes" to seeing Dodson on the porch during his polygraph because he "was afraid and in fear of losing his job because the way the case had been handle [sic] and the dishonestly [sic] shown by [his] supervisors." (Doc. 33 ¶ 8.) Plaintiff further states that he "had no intentions of being dishonest with anyone and after the polygraph and asked to speak with Dixon to clear up the matter." (*Id.*)

Plaintiff's polygraph results and confession were reported to the DPS Command Staff at headquarters. (Doc. 26-1 ¶ 27.) Per Defendant, because McDonough felt that what may have been a routine reporting matter had evolved into a complex issue with constitutional implications, McDonough requested that an investigation be conducted

by the Office of Professional Standards, which conducts internal affairs investigations. (*Id.* ¶ 28.) Plaintiff was placed on administrative leave without pay for the duration of the investigation. (*Id.* ¶ 29.) On August 27, 2009, during an interview with OPS officer, Sergeant James Welch, Plaintiff admitted that his prior two written statements were deceptive in that he did not see Dodson on the front porch or enter the Lowe residence. (*Id.* ¶ 32.) Plaintiff also admitted to being untruthful to Dixon in the investigation. (*Id.*) Additionally, Plaintiff admitted that he had an opportunity prior to his polygraph to tell the truth but chose not to and that he was deceptive during the polygraph. (*Id.*) After reviewing the results of the investigation, Welch determined that Plaintiff's conduct violated DPS Code of Conduct Policy 3.01.A.9, which states that "[m]embers are required to be truthful to their supervisors and to all superior officers." (*Id.* ¶ 33.) Welch also determined that Plaintiff's submission of two false statements to Dixon violated Code of Conduct Policy 3.01.G.10, which states "Reports submitted by members will be truthful and complete, and no member will knowingly make false statements, charges or allegations in connection with any citations, warnings, assistance rendered, traffic crash reports, field reports, investigative reports, computer entries or by any other means which creates an official record of the Department." (*Id.* ¶ 34.)

Welch's investigative summary was received by McDonough on October 22, 2009. (*Id.* ¶ 36.) On November 4, 2009, McDonough met with Plaintiff to give him a chance to explain any inconsistencies in his written statements, polygraph, and his post-polygraph interview. (*Id.* ¶ 37.) Though he had admitted in his post-polygraph interview that his two previous written statements were false, on this occasion Plaintiff

stated that the inconsistencies were "merely a transcript error." (*Id.*) Per Plaintiff, when McDonough accused of him of choosing to protect the two officers rather than protect the citizen, Plaintiff contended "that he did not protect the two officers and that his report was simply a transcript error." (Doc. 33 ¶ 9.)

On November 4, 2009, McDonough issued Plaintiff a Notice of Proposed Adverse Action of dismissal for misconduct. (*Id.* ¶ 38.) According to McDonough, Plaintiff's dismissal was a direct result of his failure to tell the truth and his failure to uphold two basic tenets of every sworn officer's oath—truthfulness and respect for Fourth Amendment rights. (*Id.* ¶ 39.)

Plaintiff requested and was granted a review of his dismissal. (*Id.* ¶ 40.) On November 18, 2009, Plaintiff presented his case to the reviewing officer, Lieutenant Colonel Fred Snellings, a black male. (*Id.*) Plaintiff gave an oral presentation, responded to questions, and submitted documentation. (*Id.*) Thereafter, Snellings issued Plaintiff a final decision affirming the dismissal. (*Id.*)

 On or about April 19, 2010, Plaintiff filed a charge with the EEOC, alleging that his dismissal was based upon his race and age. (*Id.* ¶ 41.) On September 27, 2011, the EEOC issued a Notice of Right to Sue. (Doc. 1-1.)

## IV.   DISCUSSION

### A.   Title VII Race Discrimination Claim

When a plaintiff seeks to prove a Title VII violation through circumstantial evidence (as is the case here since Plaintiff offers no direct evidence of discrimination), the Court is guided by the burden-shifting framework established in *McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792 (1973). *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1331 (11th Cir. 1998). Under this framework, in order to establish a *prima facie* case of discrimination under Title VII, a plaintiff must show that he: 1) is a member of a protected class; 2) was qualified for the position; 3) suffered an adverse employment action; and 4) can show that similarly situated employees outside of his protected class were treated more favorably or was replaced by someone outside of her his/her protected class. *Rice-Lamar v. City of Ft. Lauderdale*, 232 F.3d 836, 842 (11th Cir. 2000). If the claimant establishes a *prima facie* case of discrimination, this creates a presumption of discrimination, and the burden then shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action to rebut the presumption. *Standard*, 161 F.3d at 1331.

Defendant alleges that Plaintiff cannot establish a *prima facie* case of discrimination because he cannot identify similarly situated Caucasian employees who were treated more favorably. On the contrary, Plaintiff alleges that five white males—Sergeant James Warren, Trooper First Class Lavon Kitchens, TFC Jonathan Foskey, and Sergeant Randy Lane—engaged in similar conduct but were dealt with more leniently than he was because of their race. The Court will address each of these comparators.

In order to determine whether a valid comparator has been presented, the Court must consider "whether the comparators were involved in, or accused of, the same or similar conduct and disciplined differently." *Beckles v. Federal Exp. Corp.*, No. 11-14283, 2012 WL 3932112, at *2 (11th Cir. Sept. 11, 2012) (citing *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)). A plaintiff is similarly situated to another employee only if

the "quantity and quality of the comparator's misconduct" are "nearly identical." *Johnson v. Miller Brewing Co.*, 341 F. App'x 477, 478 (11th Cir. 2009) (quoting *Burke-Fowler*, 171 F.3d at 1323). Importantly, "[t]he plaintiff and the employee she identifies as a comparator must be similarly situated "in all relevant respects." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) (citations omitted). This requirement that the comparator be "nearly identical to the Plaintiff" is in place "to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001) (citations omitted).

## 1.    James Warren

In May 2010, McDonough issued Sergeant James Warren, a white male, a Notice of Proposed Adverse Action of Suspension Without Pay for ten days for misconduct and conduct reflecting discredit upon DPS. (Doc. 26-1 ¶ 43.) Warren was alleged to have made racial gestures in the presence of fellow officers. (*Id.*) During the investigation, Warren was administered a polygraph examination with results "indicative of deception when answering relevant questions regarding the issues at hand." (*Id.*) McDonough stated "that while Warren's behavior was clearly inappropriate and unprofessional, the underlying facts weighed in his decision: the person who reported Warren's behavior, TFC George Kitchens[,] did not report it in a timely manner as required by DPS policy." (*Id.*) Thus, because of the totality of circumstances and the fact that Warren was honest in his post-polygraph interview, McDonough determined that a suspension without pay was the proper discipline. (*Id.*)

Plaintiff contends that Warren was given two separate polygraph examinations where he was given five opportunities to be truthful. (Doc. 31 at 3.) As Plaintiff himself notes, however, "according to Defendant's documentation Warren was forthright in his post-polygraph interview." (*Id.*) The Court finds that Warren's candor during his post-polygraph interview, without a later recantation, makes him an inappropriate comparator. Though both Plaintiff and Warren were deceptive during their polygraph, Warren unequivocally told the truth following his polygraph. On the contrary, after his polygraph, Plaintiff admitted to being dishonest about seeing Dodson on the porch, but later when he was given a chance to reconcile all of the inconsistencies, Plaintiff once again contended that the issue was "merely a transcript error." Thus, Plaintiff never unequivocally told the truth, and therefore, he and Warren are not similarly situated. Additionally, Plaintiff's false statements involved a possible constitutional violation of a citizen. Warren's deception involved his dispute with a fellow officer and was thus an internal departmental issue. While the Court does not condone Warren's alleged use of racial epithets, the constitutional implications of Plaintiff's conduct made the quality of the misconduct graver. Thus, the "quality" of Plaintiff's and Warren's misconduct was not "nearly identical." *Johnson*, 341 F. App'x at 478.

### 2.    George Kitchens

Plaintiff also proffers Kitchens, the other officer in the Warren incident, as a similarly situated comparator. As noted above, the Warren investigation was initiated based on a complaint by Kitchens. (Doc. 26-1 ¶ 44.) During the investigation, it was revealed that Kitchens also made racial gestures in the presence of fellow officers. (*Id.*)

Kitchens, too, was administered a polygraph during which he gave deceptive answers. (*Id.*) Following this incident, Kitchens resigned. (*Id.*) Therefore, because Kitchens voluntarily chose to leave and preempted any discipline from DPS, Kitchens is not an appropriate comparator since it is unknown whether he would have been terminated had he chosen not to resign.

### 3.   Captain Fielding

Plaintiff also contends that Captain Fielding is a similarly situated compactor. (Doc. 31 at 4.) Fielding, a white male, was a supervisor to Stacey Forrest, a third individual who was present when Warren used the racial epithet. (*Id.*; Doc. 34-3 at 76.) After Warren reported the racial-slur incident to Fielding, Fielding spoke to Forrest who stated that he did not want to file a grievance or carry the matter any further. (Doc. 34-3 at 79.) Per Plaintiff, when Fielding was asked to describe the incident in an interview Fielding stated "that he was not familiar with what steps to take as they relate to the policy in an [sic] hostile work environment so he did nothing." Even if Fielding violated a policy that required that he report Warren's conduct to Human Resources, his conduct was in no way similar to Plaintiff's. Therefore, Plaintiff and Fielding are not similarly situated.

### 4.   Randy Lane

In April 2009, Lane was under investigation for falsifying documents related to traffic stops. (Doc. 26-1 ¶ 45.) Prior to the conclusion of the investigation, Lane was granted disability retirement by the Employees' Retirement System of Georgia. (*Id.*) Plaintiff alleges more specifically that Lane's transgression involved alleging that a

violator attacked him during a traffic stop and caused injury to his (Lane's) back. (Doc. 33 ¶ 13.) Per Plaintiff, Lane was granted retirement in lieu of further investigation. (*Id.*) First, Plaintiff does not provide any citations to any record evidence to support these contentions. (*See generally id.*) And even if he did, Plaintiff's allegation reflects that Lane engaged in conduct tantamount to disability fraud (from what this Court can glean), and while that is conduct considered quite contemptible in this Court's opinion, it is misconduct nevertheless distinguishable from Plaintiff's. The misconduct must be "sufficiently similar" to make the individuals similarly situated comparators for the purposes of summary judgment. *See Roy v. Broward Sheriff's Office*, 160 F. App'x 873, 876 (11th Cir. 2005). Second, while Plaintiff alleges that Lane was allowed to retire to avoid the imposition of any discipline, there are numerous factors, to which this Court is not privy, involved in the retirement process. Additionally, as noted by Defendant, the Employees' Retirement System of Georgia is a government entity separate from DPS. (Doc. 35 at 6.) Therefore, the Court is not in a position to say whether the appropriate response to Lane's misconduct was termination without regard for any separate retirement considerations. Additionally, Plaintiff has not shown that he was eligible, but was denied the opportunity, to retire for disability or any other reason. Accordingly, Lane is not a similarly situated comparator.

## 5.   Keith Collins

Plaintiff alleges that Sergeant First Class Collins, a white male, falsified investigative reports as well as numerous other department policy violations but was allowed to remain employed with DPS. (Doc. 33 ¶ 14.) Defendant notes that Collins was

demoted to Trooper First Class because he mismanaged the evidence room; operated speed detection devices without certification; falsified paperwork to obtain speed detection device recertification; authorized inappropriate timesheet changes for a subordinate; failed to complete a crash report in a timely manner; failed to complete Administrative License Suspension form; and, solicited a donation from a vendor. (Doc. 26-1 ¶ 47.) Defendant states that an internal investigation was conducted, and that Collins was truthful at all times during the investigation. (*Id.*) Collins was eventually demoted three ranks to a position without supervisory authority because he demonstrated a lack of supervisory responsibility. (*Id.*) McDonough states that dismissal was not warranted because Collins remained honest during the investigation. (*Id.*)

After reviewing Collins's "misconduct," the Court finds that it is not sufficiently similar to Plaintiff's misconduct. Most of Collins's conduct involved internal financial and administrative mismanagement. This conduct is not similar to Plaintiff's act of falsifying a police report to cover up a potential constitutional violation of a citizen's Fourth Amendment rights and subsequently rescinding his confession regarding the incident. Accordingly, the Court concludes that Collins and Plaintiff are not similarly situated comparators.

### 6.    Jonathan Foskey

In March 2011, Trooper First Class Foskey, a white male, received a Notice of Proposed Adverse Action of Dismissal for submitting two falsified incident reports. (Doc. 26-1 ¶ 42.) Defendant says that Foskey, a rookie officer, filed and submitted

corrected incident reports prior to his court testimony. (*Id.*) Defendant further states that McDonough decreased the adverse action to a demotion, with salary reduction, from TFC to Dispatcher because Foskey was truthful when questioned about his misrepresentations. (*Id.*) Though he alleges that Foskey was required to adhere to the same regulations as he, Plaintiff does not deny that Foskey was truthful when questioned. (*See* Doc. 33 ¶ 11.) Therefore, although both Foskey and Plaintiff both engaged in the act of falsifying incident reports, unlike Foskey, Plaintiff conduct was exacerbated by his failure to unequivocally tell the truth about what took place when he entered Ms. Lowe's home on March 9, 2009. As such, the "quality and quantity" of Plaintiff's misconduct is not sufficiently identical to Foskey's in the way Plaintiff alleges.

### 7. Richard Peck and Brian Sutherland

In its Motion for Summary Judgment, Defendant discusses the conduct of other individuals—Richard Peck and Brian Strickland. (Doc. 26-2 at 15-16, 17.) Per Defendant, in his deposition, Plaintiff referenced these individuals as two white males who were given several chances while blacks were not. (*Id.* at 5.) Plaintiff did not, however, mention these individuals in his Responsive Statement of Facts or in his Brief in Opposition to Summary Judgment. (*See* Docs. 31, 33.) Nevertheless, the Court finds that Peck's and Sutherland's misconduct was dissimilar to Plaintiff's. Peck was demoted/disciplined for failing to properly follow the chain of custody of trial evidence, failing to properly supervise employees, and failing to follow DPS procedure in issuing a driver's license to a transgendered individual. (Doc. 26-1 ¶ 46.) Strickland

was suspended without pay and transferred for inappropriate comments in the workplace. A year after this suspension, Strickland was demoted for inappropriate comments and use of profanity in the workplace, and then later placed on administrative leave with pay during an investigation of possible misconduct. (*Id.* ¶ 48.) In April 2010, prior to the conclusion of the investigation, Strickland was granted disability retirement by the Employees' Retirement System of Georgia. (*Id.*) Failing to follow administrative procedures and making in appropriate comments, respectively, bear no resemblance to falsifying police reports and failing to be truthful about said falsification. Therefore, the Court concludes that these individuals are not similarly situated comparators.

Defendant asserts that Plaintiff's termination was precipitated by his failure to tell the truth about the March 9, 2009 incident when he was given a final opportunity to reconcile all of his previous statements. In response, Plaintiff has failed to identify an individual who was 1) untruthful while engaging in the course of his/her employment (Plaintiff was untruthful on three occasions to be exact—in his two written statements and during his polygraph examination), 2) confessed to being untruthful, and then 3) rescinded that confession when confronted by his superior (thus, being untruthful on a fourth and final occasion). For this misconduct, Plaintiff has failed to identify someone who behaved similarly but was disciplined differently. Instead, Plaintiff has merely argued that white troopers also violated the same basic duties to be truthful and respect the law. Pointing to a violation of an officer's basic duties is not, however, sufficient to meet Plaintiff's burden to identify a similarly situated comparator. Accordingly,

Plaintiff has failed to identify a similarly situated comparator, and has therefore failed to meet his burden of demonstrating a *prima facie* claim for race discrimination.

### B.    42 U.S.C. § 1983 Due Process Claim

Plaintiff has also alleged that his due process rights were violated because he was not allowed to have legal counsel at his appeals hearing on November 18, 2009, before the DPS Reviewing Officer regarding his proposed termination. (Doc. 31 at 1.) Defendant asserts that Plaintiff's § 1983 claim is not actionable because the Georgia Department of Public Safety is not a "person" as defined by 42 U.S.C. § 1983 and because his claim is barred by Eleventh Amendment Immunity. (Doc. 26-2 at 23-24.)

The Court concurs that Plaintiff's § 1983 action is not actionable against DPS because "states, state agencies, and state officials acting in their official capacities cannot be sued under § 1983. *McCall v. Dept. of Human Resources*, 176 F. Supp. 2d 1355, 1363 (M.D. Ga. 2001) (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989)). Moreover, Plaintiff has not alleged that the State of Georgia or DPS has waived its sovereign immunity, nor is there any evidence of such a waiver. Thus, in the absence of an allegation that DPS is not considered an "arm of the state," the Eleventh Amendment also bars Plaintiff from bringing suit against DPS in federal court under section 1983. *See Taylor v. Dept. of Public Safety*, 142 F. App'x 373, 374 (11th Cir. 2005) (affirming district court's dismissal of 42 U.S.C. § 1983 action on the grounds that "this case was brought against state agencies, which are not "persons" for purposes of § 1983 and which enjoy the same Eleventh Amendment immunity as does the State of Georgia"). Accordingly,

Defendant is entitled to judgment as a matter of law as to Plaintiff's 42 U.S.C. § 1983 claim.

<u>CONCLUSION</u>

For the foregoing reasons, Georgia Department of Public Safety's Motion for Summary Judgment (Doc. 26) is **GRANTED**. It is hereby **ORDERED AND ADJUDGED** that Plaintiff shall take nothing by his Complaint (Docs. 1, 2), and **JUDGMENT** shall be entered in favor of Defendant.

**SO ORDERED**, this   30th   day of January 2014.


　　　　　　　　/s/ W. Louis Sands
　　　　　　　　**W. LOUIS SANDS, JUDGE**
　　　　　　　　**UNITED STATES DISTRICT COURT**